**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| AMERICAN PATENTS LLC,<br><br>    *Plaintiff*,<br><br>  vs.<br><br>ASUSTEK COMPUTER INC.,<br><br>    *Defendant.* | Case No. 4:18-CV-698 (ALM) |

**DEFENDANT ASUSTEK COMPUTER INC.'S MOTION**
**TO DISMISS UNDER RULE 12(b)(6)**

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. STATEMENT OF ISSUES TO BE DECIDED ................................................. 2

III. FACTUAL BACKGROUND ............................................................................. 3

IV. LEGAL STANDARDS ..................................................................................... 4

    A. Motions to Dismiss Under Rule 12(b)(6) ............................................. 4

    B. Direct Patent Infringement ................................................................... 4

    C. Indirect Patent Infringement – Active Inducement ............................... 5

    D. Indirect Patent Infringement – Contributory Infringement ................... 5

V. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF
INFRINGEMENT FOR ANY PATENT ........................................................... 6

    A. The Maria Patents ................................................................................ 6

    B. The Knox Patents ................................................................................. 8

    C. The Mody Patents .............................................................................. 10

VI. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DIRECT
INFRINGEMENT AS TO THE MARIA PATENTS ..................................... 12

VII. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF INDIRECT
PATENT INFRINGEMENT FOR ANY PATENT ........................................ 14

    A. The Indirect Infringement Claims Should Be Dismissed Entirely ...... 14

    B. At A Minimum, The Indirect Infringement Claims Should Be Dismissed
As To Pre-Suit Conduct ..................................................................... 17

VIII. THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF WILLFUL
INFRINGEMENT FOR ANY PATENT ......................................................... 19

IX. CONCLUSION ............................................................................................... 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Akamai Techs., Inc. v. Limelight Networks, Inc.*,
797 F.3d 1020 (Fed. Cir. 2015)........................................................................5, 13, 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ *passim*

*Babbage Holdings, LLC v. Activision Blizzard, Inc.*,
No. 2:13-750-JRG, 2014 WL 2115616 (E.D. Tex. May 15, 2014) ........................................18

*Bell Atlantic Corporation v. Twombly*,
550 U.S. 544 (2007)........................................................................1, 2, 4, 18

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012)........................................................................6

*Disc Disease Solutions Inc. v. VGH Solutions, Inc.*,
888 F.3d 1256, 1260 (Fed. Cir. 2018) ................................................................8, 12

*DSU Med. Corp. v. JMS Co., Ltd.*,
471 F.3d 1293 (Fed. Cir. 2006)........................................................................5

*Ericsson, Inc. v. D-Link Systems, Inc.*,
773 F.3d 1201 (Fed. Cir. 2014)........................................................................13

*Genedics, LLC v. Meta Co.*,
No. 17-1062-CJB, 2018 WL 3991474 (D. Del. Aug. 21, 2018)........................................11

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)........................................................................5

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)........................................................................19

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006)........................................................................12, 13

*Varian Med. Sys., Inc. v. Elekta AB*,
C.A. No. 15-871-LPS, 2016 WL 3748772 (D. Del. July 12, 2016) ........................................19

*Vita–Mix Corp. v. Basic Holding, Inc.*,
581 F.3d 1317 (Fed. Cir. 2009)........................................................................5

-ii-

**Statutes**

35 U.S.C. § 271(a) ...................................................................................................1, 5, 12

35 U.S.C. § 271(b) ...............................................................................................................5

35 U.S.C. § 271(c) .........................................................................................................6, 17

**Other Authorities**

Fed. R. Civ. P. 8(a)(2) ........................................................................................................4

Rule 12(b)(6) ........................................................................................................................4

Defendant ASUSTeK Computer Inc. ("ASUSTeK" or "Defendant") respectfully moves to dismiss all claims brought by Plaintiff American Patents LLC ("American Patents" or "Plaintiff").[1]

## I.   **INTRODUCTION**

This is a motion to enforce the pleading standards of *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).  American Patents brought eleven complaints against makers of cell phones, tablets, laptops, and televisions.  American Patents alleges that the defendants infringe patents from four families of patents that it acquired from other companies on the secondary market.  The complaints, including the complaint here against ASUSTeK, appear to be a mix-and-match exercise of boilerplate infringement allegations, with the allegations related to each patent family largely copied verbatim from one complaint to the next.

American Patents' complaint against ASUSTeK, the defendant here, fails to meet the *Twombly*/*Iqbal* pleading standards in four ways.  First, as to all patents, the complaint fails to allege sufficient factual matter that, if accepted as true, would make out a plausible claim for patent infringement.  The complaint's threadbare recitals of the elements of the patent claims are conclusory and thus not entitled to the presumption of truth.  The few individualized references to the accused products fail to convey in any way, let alone a plausible one, how the accused products are believed to infringe the claims.

Second, as to the Maria patents,[2] the complaint fails to state a plausible claim of direct infringement under Section 271(a) because the mere sale of a device cannot, as a matter of law,

---

[1] While the Court must take all factual allegations in the Complaint as true for the purposes of this motion, ASUSTeK Computer Inc. notes that it does not sell any of the accused products in the United States.  The Complaint has named the wrong defendant.

[2] U.S. Patent Nos. 7,373,655 (the "'655 Patent") and 7,934,090 (the "'090 Patent"), which list Arturo Maria as the inventor, are collectively referred to herein as "the Maria patents."

directly infringe a claim to a method of using the device.  The direct infringement allegations as to the Maria patents also fail because the accused Zenfone devices, as purportedly sold by ASUSTeK, do not include the features relied upon in the complaint—the Google Home application and the separate Google Chromecast device.  Because ASUSTeK and users are not in a joint enterprise, nor does ASUSTeK direct or control any users' independent, subsequent decisions to download, purchase, and use those features as depicted in the complaint, the complaint is devoid of any such allegations.  Therefore, the complaint fails to plausibly allege that the accused devices directly infringe the Maria patents.

Third, the complaint fails to state a plausible claim for relief with regard to active inducement and contributory infringement for any patent.  The complaint's allegations of indirect infringement are the epitome of boilerplate, with identical generic allegations made for all asserted patents at once and repeated from complaint to complaint.  These conclusory statements do not suffice under *Iqbal/Twombly* and should be dismissed.

Finally, the complaint's allegations of willful infringement are both implausible and unsupported.  American Patents accuses ASUSTeK of having a policy of blinding itself to others' patent rights, but it has included nothing to support that claim—which, tellingly, it makes verbatim against each of the defendants in the eleven cases it brought in this district.  Unsupported claims like these are precisely what *Iqbal* and *Twombly* were designed to prohibit.

Accordingly, Defendant respectfully requests that the Court dismiss the complaint for failure to state a claim.

## II.   STATEMENT OF ISSUES TO BE DECIDED

1.   Should the allegations of direct infringement of the Maria patents be dismissed because they fail to plausibly allege any act by ASUSTeK that could infringe the method claims?

2.      Should the infringement allegations of all seven patents be dismissed because they fail to allege sufficient factual matter that, if true, would make out a plausible claim for relief?

3.      Should the allegations of indirect infringement, made jointly as to all seven patents, be dismissed because they are merely conclusory and do not suffice to state a claim under *Iqbal*?

4.      Should the willful infringement allegations be dismissed as generic and implausible because they are merely conclusory and do not suffice to state a claim under *Iqbal*?

## III.     FACTUAL BACKGROUND

American Patents is a Texas limited liability company based in Tyler, Texas.  (Compl. at ¶ 1.) The defendants in the eleven complaints brought by American Patents in this district are electronics companies who manufacture and sell cell phones, tablets, laptops, and televisions. American Patents' suits against defendants assert various combinations of four patent families: the Mody patents,[3] which claim methods of synchronizing data transmission in a communication network; the Maria patents, which claim ways of authenticating requests for shared network resources in a computer network; the Knox patents,[4] which relate to virtual keyboard displays; and the Wells patents,[5] which relate to motion sensing and user input.  The Maria patents are asserted in all eleven suits, the Mody patents are asserted in nine suits, the Knox patents are asserted in eight suits, and the Wells patents are asserted in two suits.

The complaint in this case was filed on Oct. 4, 2018.  American Patents alleges that ASUSTeK infringes the Mody, Maria, and Knox patent families by selling its Zenfone or AC1900

---

[3] U.S. Patent Nos. 7,088,782 (the "'782 Patent"), 7,310,304 (the "'304 Patent") and 7,706,458 (the "'458 Patent"), which list Apurva N. Mody and Gordon L. Stuber as inventors, are collectively referred to herein as "the Mody patents."
[4] U.S. Patent Nos. 6,004,049 (the "'049 Patent") and 6,301,626 (the "'626 Patent"), which list Paul Keith Knox as the inventor, are collectively referred to herein as "the Knox patents."
[5] U.S. Patent Nos. 8,668,584 (the "'584 Patent"), 9,116,543 (the "'543 Patent") and 9,606,674 (the "'674 Patent"), which list William R. Wells as the inventor, are collectively referred to herein as "the Wells patents."

lines of products.  According to the complaint, the Zenfone devices infringe the Maria patents by "allow[ing] for initiation and/or control of Internet streamed content." (Compl. at ¶¶ 50, 62.)  The Zenfone devices are alleged to infringe the Knox patents by "includ[ing] advanced keyboard layouts including . . . predictive text and other advanced keyboard layout abilities." (Compl. at ¶¶ 73, 89.)  Plaintiff and Defendant filed a joint motion to waive service for Defendant and extend the deadline to answer or otherwise respond to January 3, 2019, which the Court granted. (Dkts. 11, 12).  Subsequently, Defendant filed an unopposed motion to further extend its deadline to answer or otherwise respond to January 11, 2019, which the Court granted. (Dkts. 13, 14).   In lieu of answering the complaint, Defendant moves to dismiss the complaint for failure to state a claim.

## IV.   **LEGAL STANDARDS**

### A.   **Motions to Dismiss Under Rule 12(b)(6)**

A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  This means a complaint must allege sufficient facts "to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  To survive a motion to dismiss for failure to state a claim, a plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

### B.   **Direct Patent Infringement**

"[W]hoever without authority makes, uses, offers to sell, or sells any patented invention . . . infringes the patent." (35 U.S.C. § 271(a).)  For a patented method, proof of direct infringement under § 271(a) requires that ***the defendant*** perform every step of the method. *Akamai Techs., Inc.*

*v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015).  "Where more than one actor is involved in practicing the steps, a court must determine whether the acts of one are attributable to the other such that a single entity is responsible for the infringement."  *Id.*  The conditions for such vicarious liability are limited to "two sets of circumstances:  (1) where [the defendant] directs or controls others' performance, and (2) where the actors form a joint enterprise."  *Id.*

### C.      Indirect Patent Infringement – Active Inducement

"Whoever actively induces infringement of a patent shall be liable as an infringer."  35 U.S.C. § 271(b).  Liability for inducement "requires a showing that the alleged inducer [1] knew of the patent, [2] knowingly induced the infringing acts, and [3] possessed a specific intent to encourage another's infringement of the patent." *Vita–Mix Corp. v. Basic Holding, Inc.*, 581 F.3d 1317, 1328 (Fed. Cir. 2009); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011).  "[M]ere knowledge of possible infringement" is insufficient to prove active inducement of the infringement.  *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006).

### D.      Indirect Patent Infringement – Contributory Infringement

"Whoever offers to sell or sells . . . a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process," is liable for contributory infringement if (1) the product "constitut[es] a material part of the invention," (2) the infringer "know[s] the same to be especially made or especially adapted for use in an infringement of such patent," and (3) the product is "not a staple article or commodity of commerce suitable for substantial noninfringing use."  35 U.S.C. § 271(c).  "To state a claim for contributory infringement, therefore, a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses."

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1337 (Fed. Cir. 2012).

## V.  THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF INFRINGEMENT FOR ANY PATENT

American Patents' claims of infringement should be dismissed because the allegations in the complaint fail to articulate a plausible theory of how the accused features allegedly satisfy the elements of any of the asserted claims.

### A.  The Maria Patents

The Maria patents are allegedly directed to a method of authenticating a computer's request for access to other computing resources in a network.  In the claimed method, the computer wishing to access a network resource "assume[s] the identity" of another "network node" or "network element" that is "pre-authorized to access" the desired network resource, rather than having its request authenticated and authorized by the desired network resource.  *See generally* '655 Patent at 5:30-6:10; '090 Patent at 4:59-5:8.

The complaint appears to allege that the claimed method is practiced when an ASUSTeK device is used in conjunction with a Google Chromecast device, but the complaint is devoid of any factual allegations explaining how each element of the claimed methods maps onto that process. For both of the asserted Maria patents, the complaint simply recites elements of the asserted claims and states that "[t]he methods practiced by the accused products include" each element.  (Compl. at ¶¶ 53-56, 65-67.)  For example, the complaint alleges that "[t]he methods practiced by the accused products include arranging *a network element* in a network, the network element being pre-authorized to access a set of *network resources*," parroting the language of the claim. *Compare* Compl. at ¶ 53 *with* the '655 Patent at 5:31-33.  Beyond simply reciting the claim language, the complaint makes no attempt to match its component pieces to elements of the

accused products.  For example, the complaint does not even identify what device is alleged to correspond to the "*network element*".  From the allegations in the complaint, one cannot determine whether it is the accused ASUSTeK device, a Google Chromecast, or something else that is performing each step in the asserted method claim.  Similarly, the complaint fails to identify what aspects of the accused devices correspond to the claimed "network resources" that the network element is preauthorized to access.  The remaining elements of the asserted claims receive similar treatment in the complaint.

The only allegations in the complaint that do not simply parrot back the language of the asserted claims are a pair of screenshots from Google websites describing Google's Chromecast product and how to use it with devices running the Android operating system.  But these screenshots do not add sufficient factual matter to make out a plausible claim for relief.  Even if what is depicted in the screenshots is assumed to be true, the complaint does not identify (1) how these images relate to the accused devices, (2) what claim elements are alleged to be depicted in the screenshots, which are allegedly performed by the accused devices as opposed to the Google Chromecast device (a separate device that is not part of the accused devices), or (3) otherwise how information in the screenshots allegedly corresponds to the various elements of the claimed methods.  Simply put, with no explanation or information provided in the complaint, it is impossible to tell how American Patents alleges that the various steps of the method claims are performed by the accused products.

This case is not like *Disc Disease Solutions Inc. v. VGH Solutions, Inc.*, in which the Federal Circuit found it sufficient for the plaintiff's complaint to allege generally that the defendant's products met each and every element of the claims.  888 F.3d 1256, 1260 (Fed. Cir. 2018).  There, the case "involve[d] a simple technology," an inflatable spinal brace.  *Id.* at 1257-

-7-

58, 1260.  The language of the claims was directed to visible, physical components of the accused device.  *See id.* at 1257-58.  Thus, the court concluded that it was enough to list the patents, identify the accused devices and "attach[] photos of the product packaging as exhibits," as that was "enough to provide [the defendant] fair notice of infringement."  *Id.* at 1260.

Here, by contrast, the claims are directed to a method of authenticating requests for shared network resources in a computer network.  Far from being a "simple technology," carrying out the claimed authentication process would involve complicated electronics and communications protocols.  Unlike *Disc Disease*, where a photo was sufficient because the claims were directed to visually identifiable components, the claimed elements here—"network element," "network resources," etc.—cannot be seen or otherwise readily identified simply by knowing what product is accused.  Therefore, the allegations in American Patents' complaint fail to give "fair notice of infringement."  *Id.*

In sum, American Patents' allegations are insufficient to make a plausible claim of patent infringement.  The complaint simply states that the accused products contain each element of the claims with no factual support for those conclusions.  Because such "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a plausible claim for relief, the complaint's allegations regarding the Maria patents should be dismissed.  *Iqbal*, 556 U.S. at 678.

**B.**     **The Knox Patents**

American Patents' claims of infringement related to the Knox patents should also be dismissed because the allegations fail to articulate any theory, let alone a plausible theory, of how the accused features allegedly infringe any of the Knox patents' claims.

-8-

The Knox patents relate to a method of configuring an input device such as a keyboard. The method involves, among other things, selecting a layout for the input device, determining whether the input layout is currently displayed, retrieving the layout from another location if necessary, and displaying the layout on "display elements corresponding to the input device layout." *See generally* '049 Patent at 8:30-44 (claim 1), 9:12-25 (claim 10); '626 Patent at 8:41-54 (claim 1), 9:21-34 (claim 8).

The complaint's allegations regarding the Knox patents primarily consist of boilerplate statements alleging that the claimed methods are "performed by the accused products" and that "the accused products" themselves include each element of the patented claims. *E.g.*, Compl. at ¶¶ 92 ("The methods performed by the accused products include selecting an input device layout."), 95 ("The accused products include means for identifying an input device layout.").  The complaint makes no attempt to provide specific factual allegations or support for those conclusory statements.  The '049 patent, for example, includes a step of "determining a location of the selected input device layout when it is determined that the selected input device layout is not displayed." ('049 Patent at 8:38-40.)  But the complaint identifies neither what "input device layout" is "not displayed," nor what allegedly constitutes "determining [the] location" of the input device layout that is not displayed.  Similarly, the '626 patent includes an additional requirement of "downloading the identified input device layout over the network from a server having a plurality of input device layouts." ('626 Patent at 8:50-52.)  However, nowhere does the complaint identify what input device layouts the accused devices allegedly download, or from whose server they are downloaded.

The three screenshots included in the complaint (which do not appear to have been made on the accused products) add no substance or support to the conclusory allegations contained in

the boilerplate text.  *See, e.g.*, Compl. at ¶¶ 92, 93, 95.  The screenshots are presented entirely without explanation, with nothing to link any features or objects depicted in the screenshots to the elements of the patents' claims.  Absent explanation, the screenshots do not seem to remedy any of the deficiencies noted above:  which "input device layout" is "not displayed," what constitutes "determining [the] location" of the input device layout, what input device layouts are allegedly being downloaded, and from what "network" and server" the input device layouts are allegedly downloaded.  The screenshots thus do not add sufficient factual matter to save the claims from dismissal.

In sum, the complaint wholly fails to articulate a theory of how the accused devices meet the elements of the patent claims.  American Patents' claims of infringement of the Knox patents should be dismissed for failure to state a claim.  *See Iqbal*, 556 U.S. at 687.

### C.    <u>The Mody Patents</u>

American Patents' claims of infringement related to the Mody patents should also be dismissed because the allegations fail to articulate any theory, let alone a plausible theory, of how the accused features allegedly infringe any of the Mody patents' claims.

The Mody patents relate to a method of synchronizing data transmission in a communication network.  The method involves, among other things, "producing a frame of data comprising a training symbol that includes a synchronization component," "transmitting the frame," "receiving the transmitted frame," and "synchronizing the received demodulated frame to the transmitted frame such that the data symbols are synchronized in the time domain and frequency domain," wherein "the synchronizing in time domain comprises coarse time synchronizing and fine time synchronizing."  *See generally* '782 Patent at 22:32-48 (claim 30); '304 Patent at 18:2-26 (claim 1); and '458 Patent at 18:49-19:18 (claim 1).

The complaint's allegations regarding the Mody patents consist of alleging that the accused products "include 802.11n and/or LTE capabilities," screenshots of online specifications for the ZenFone and RAC68U highlighting Wi-Fi and LTE standards, and boilerplate statements alleging that the methods practiced by the accused products include each element of the patented claims. *E.g.,* Compl. at ¶¶ 12 ("its Zenfone and AC1900 families of products include 802.11n and/or LTE capabilities ('accused products')"), 15 ("The methods practiced by the accused products include producing a frame of data comprising a training symbol that includes a synchronization component that aids in synchronization, a plurality of data symbols, and a plurality of cyclic prefixes."), 16 ("The methods practiced by the accused products include transmitting the frame over a channel."). The complaint makes no attempt to provide specific factual allegations or support for those conclusory statements.  The '782 Patent, for example, includes a step of "producing a frame of data comprising a training symbol that includes a synchronization component that aids in synchronization, a plurality of data symbols, and a plurality of cyclic prefixes."  ('782 Patent at 22:36-40 (step of claim 30).)  But the complaint identifies neither what constitutes a "training symbol" or a "synchronization component," nor how the purported "synchronization component" "aids in synchronization."   The technology is technologically sophisticated and cannot be demonstrated with mere screenshots and a recitation of the claims.  *See Genedics, LLC v. Meta Co.*, No. 17-1062-CJB, 2018 WL 3991474, at *12 n.15 (D. Del. Aug. 21, 2018) (looking to factual allegations in the complaint for plausibility where the patents "concern subject matter that is more technologically sophisticated than in *Disc Disease*").

In sum, the complaint wholly fails to articulate a theory of how the accused devices meet the elements of the patent claims.  American Patents' claims of infringement of the Mody patents should be dismissed for failure to state a claim.  *See Iqbal*, 556 U.S. at 687.

## VI.  THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF DIRECT INFRINGEMENT AS TO THE MARIA PATENTS

Although the infringement claims relating to the Maria patents should be dismissed for the reasons detailed above, the claims of direct infringement under 35 U.S.C. § 271(a) should also be dismissed because, as a matter of law, sales of a device do not infringe a patented method of using the device.

The complaint alleges that ASUSTeK has infringed "at least Claim 5 of the '655 Patent" and "at least Claim 1 of the '090 Patent."  (Compl. at ¶¶ 51, 63.)  Each of these claims is directed to a method containing several steps, such as "receiving, at the network element, a request from a user to connect to the network element" and "accessing, by the user, one of the set of network resources that the network element is pre-authorized to access."  ('655 Patent at 6:1-2, 6:7-8.)  The complaint alleges that ASUSTeK has infringed these claims "by making, having made, using, importing, providing, supplying, distributing, selling or offering for sale *systems utilizing a method*," namely ASUSTeK's Zenfone series of products.  (Compl. at ¶¶ 52, 64 (emphasis added).)

This theory fails as a matter of law.  Even if the *use* of ASUSTeK's devices could in some circumstances infringe the Maria patents' method claims, ASUSTeK's purported sales of the device do not infringe the claims because "[m]ethod claims are only infringed when the claimed process is performed, not by the sale of an apparatus that is capable of infringing use."  *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311 (Fed. Cir. 2006); *see also Ericsson, Inc. v. D-Link Systems, Inc.*, 773 F.3d 1201, 1220-1222 (Fed. Cir. 2014).

That principle of law bars direct infringement liability for ASUSTeK's sales of the accused devices.  The complaint does not allege that ASUSTeK itself performs the patented methods using the accused products.  Nor does the complaint allege that purchasers of the accused products

perform the steps of the patented methods in circumstances giving rise to vicarious liability for ASUSTeK.  *Cf. Akamai*, 797 F.3d at 1022 (prescribing vicarious liability "(1) where [the defendant] directs or controls others' performance, and (2) where the actors form a joint enterprise").  The complaint simply asserts that ASUSTeK has infringed the patented method by selling devices capable of performing the method, but as a matter of law, that cannot be.

The allegations of direct infringement of the Maria patents also fail for another independent reason:  ASUSTeK does not sell devices possessing the features depicted in the complaint.  The screenshots in paragraphs 54-55 and 65-66 of the complaint depict instructions for using the Google Home application with a Google Chromecast device.  *See* Compl. at ¶¶ 54-55, 65-66.  The complaint does not allege that ASUSTeK includes the Google Home application with the accused devices as sold, nor does it allege that ASUSTeK sells the Google Chromecast device alongside the accused devices.  Indeed, American Patents cannot make any such allegation, as ASUSTeK does not do either of those things.  If a user wishes to use the Google Home application on a ASUSTeK device, he or she must download and install the application after purchasing the device from ASUSTeK.  Similarly, if a user wishes to use his or her ASUSTeK device with a Google Chromecast device, he or she must purchase a Chromecast separately from Google or another retailer.  The devices sold by ASUSTeK are not capable of performing the functions depicted in the complaint without modification by the user.  And even if there are some ASUSTeK users who choose to install the Google Home application, purchase a Google Chromecast, and use their ASUSTeK device in conjunction with their Chromecast, the complaint alleges no basis for those actions to be attributed to ASUSTeK.  *Cf. Akamai*, 797 F.3d at 1022.  For this independent, additional reason, American Patents' claims of direct infringement of the Maria patents should be dismissed.

-13-

The complaint also fails to allege that ASUSTeK includes the Google Home application with the accused devices as sold or that ASUSTeK sells the Google Chromecast device alongside the accused devices.  Indeed, American Patents cannot make any such allegation, as ASUSTeK does not do either of those things.  If a user wishes to use his or her ASUSTeK device with a Google Chromecast device, he or she must purchase a Chromecast separately from Google or another retailer.  And even if there are some ASUSTeK users who choose to purchase a Google Chromecast and use their ASUSTeK device in conjunction with their Chromecast, the complaint alleges no basis for those actions to be attributed to ASUSTeK.  *Cf. Akamai*, 797 F.3d at 1022. For this independent, additional reason, American Patents' claims of direct infringement of the Maria patents should be dismissed.

## VII.  THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF INDIRECT PATENT INFRINGEMENT FOR ANY PATENT

### A.  The Indirect Infringement Claims Should Be Dismissed Entirely

Separate from the direct infringement allegations, the indirect infringement allegations should be dismissed for failure to state a claim because, as to those claims, the complaint contains only "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  *Iqbal*, 556 U.S. at 678.

The complaint's allegations of indirect infringement are even more generic than its allegations regarding direct infringement of the asserted patents.  All of the allegations regarding induced infringement for all of the asserted patents are contained in two paragraphs.  The first alleges that ASUSTeK has induced "the end-users, Asus's customers" to directly infringe the asserted patents "by using the accused products" because "Asus took active steps . . . with the specific intent to cause [its users] to use the accused products in a manner that infringes one or more claims of the patents-in-suit."  (Compl. at ¶ 103.)  According to the complaint, "[s]uch steps

-14-

by Asus included, among other things, advising or directing customers and end-users to use the accused products in an infringing manner; advertising and promoting the use of the accused products in an infringing manner; and/or distributing instructions that guide users to use the accused products in an infringing manner." *Id.*

This first paragraph clearly fails to meet the requisite pleading standards.  In attempting to state a claim for active inducement, the paragraph generically recites factors that could lead to a finding of inducement—"advising or directing customers," "advertising and promoting," etc.— with respect to all of the asserted patents (which claim very different features), without providing any support for the conclusory statements, such as by identifying specific examples or actions taken by ASUSTeK to advertise, direct or instruct users to use the accused products in an allegedly infringing fashion.  *See id.*  American Patents' conclusory statements are even made in the alternative, so that it is impossible to know which, if any, of the factors apply to ASUSTeK.  *See id.* ("steps by Asus included … advising or directing customers and end-users … advertising and promoting the use … ***and/or*** distributing instructions.") (emphasis added).  The very same statements could be made about any claim of active inducement in any case.

The second paragraph of allegations regarding active inducement fares no better.  That paragraph alleges that ASUSTeK has induced "its affiliates, or third-party manufacturers, shippers, distributors, retailers, or other persons acting on its or its affiliates' behalf … by importing, selling or offering to sell the accused products."  Like the first paragraph, the remainder of the second paragraph recites conclusory allegations of factors that may establish inducement liability, but the allegations are generic to all asserted patents.  (Compl. at ¶ 104.)

Neither paragraph regarding active inducement ties any specific activities undertaken by ASUSTeK to third-party uses of the accused devices that allegedly infringe the patents.  Nor are

-15-

there allegations found elsewhere in the complaint, such as the complaint's allegations regarding direct infringement, that provide the requisite detail to render American Patent's indirect infringement allegations plausible.  For example, with regard to alleged direct infringement of the Maria patents, the complaint includes two screenshots depicting instructions for using the Google Home application to set up a Google Chromecast device and a general advertisement for the features of Chromecast.  (Compl. at ¶¶ 54, 55.)  Even if these screenshots advertise or instruct users on infringing conduct, they are taken from ***Google*** websites, not from ASUSTeK's website or other materials.  Google's website materials are not statements of, nor actions by ASUSTeK to advertise or instruct users.  Similarly, for the Knox patents, the complaint's direct infringement allegations include screenshots from third-party websites describing features of the virtual keyboard in Google's Android operating system. These screenshots cannot support a claim that ASUSTeK has actively induced infringement of the patents.

The contributory infringement allegations, contained in a single paragraph, are similarly conclusory.  The complaint contains no specific factual allegations for the asserted patents other than reciting the accused features and parroting the legal standard, without more, that they "constitute a material part of the invention of one or more of the claims of the '782 Patent, the '304 Patent, the '458 Patent, the '655 Patent, the '090 Patent, the ''049 Patent, and the '626 Patent and are not staple articles of commerce suitable for substantial non-infringing use."[6]  (Compl. at ¶ 105.)  The accused features themselves are defined in generic, circular terms—for example, as to the

---

[6] While the complaint alleges that the "special features" constitute a material part of the invention and are not staple articles of commerce, the question is not whether the *special features* meet those requirements but whether the accused devices as a whole meet those requirements.  Section 271(c) prohibits sales of "a *component* of a patented machine, manufacture, combination or composition, or a *material or apparatus* for use in practicing a patented process."  35 U.S.C. 271(c).  Because ASUS sells the accused products as complete devices, rather than selling the accused features individually, the question for ASUS's potential liability is whether the entire device it sells "constitut[es] a material part of the invention" and is "not a staple article or commodity of commerce suitable for substantial noninfringing use."  *Id.*

-16-

Maria patents, "initiation and/or control of Internet streamed content . . . in a manner that infringes" the asserted patents. *Id.* (defining the "special features" for the Knox patents as "advanced keyboard layout capabilities in a manner that infringes" the accused patents).  Defining the allegedly infringing component as "features that infringe" does not give fair notice of what the allegedly infringing component is.[7]

The generic nature of the indirect infringement allegations (both induced and contributory infringement) is further demonstrated by the fact that they appear to be copied verbatim in each of the eleven complaints American Patents filed with the Court.  The only apparent differences among the complaints are that the defendants' names and the asserted patent numbers have been changed and that in one of the complaints, *American Patents LLC v. Hisense Co., Ltd.*, Civ. No. 4:18-768, the indirect infringement allegations are stated twice (inadvertently, it seems) for three of the asserted patents.

In sum, given that the complaint contains only "[t]hreadbare recitals" regarding active inducement and contributory infringement with no factual matter to support it, the indirect infringement allegations should be dismissed for failure to state a claim.

**B.**     **At A Minimum, The Indirect Infringement Claims Should Be Dismissed As To Pre-Suit Conduct**

Although the complaint's allegations of indirect infringement should be dismissed in their entirety for the reasons discussed above, they should also be dismissed as to conduct occurring prior to the filing of the complaint for the additional reason that the complaint fails to allege that ASUSTeK had knowledge of the asserted patents prior to the filing of the complaint.

---

[7] The definition is also circular:  The allegedly infringing component is identified and defined by the fact that it infringes the patents.  This defies the logic of the statute.  If an allegedly infringing component could be defined by the fact of its infringement, there would be no purpose to the statute's third element, which is that the component is "not a staple article or commodity of commerce *suitable for substantial noninfringing use*."  § 271(c).

Both active inducement and contributory infringement require that the defendant have knowledge of the asserted patent, so a complaint must contain sufficient factual allegations to permit an inference that the defendant had such knowledge.  *Babbage Holdings, LLC v. Activision Blizzard, Inc.*, No. 2:13-750-JRG, 2014 WL 2115616 (E.D. Tex. May 15, 2014), at *2.  The complaint here does not allege that ASUSTeK had knowledge of any of the patents prior to the filing of this suit.  To the contrary, the complaint alleges that ASUSTeK has had knowledge "at least as of the date when it was notified of the filing of this action."  *See* Compl. at ¶¶ 21, 33, 45, 57, 68, 84, 100.  Thus, the complaint includes no allegations to support a claim of indirect infringement prior to the filing of this suit.

To the extent that American Patents seeks to rely on a theory of willful blindness, its allegations simply are not plausible.  The complaint alleges that ASUSTeK "has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' patent rights." (Compl. at ¶ 106.)  But American Patents offers no evidence or factual basis for that allegation—not a policy, a memo, an email, or even a rumor—and, tellingly, American Patents appears to make identical accusations against each of the other defendants in the ten other complaints.  American Patents' allegation is precisely the type of implausible, unsupported allegation that the Supreme Court rejected in *Twombly* and *Iqbal*.

Without any allegations supporting the requirement that ASUSTeK had knowledge of the asserted patents prior to the current suit, American Patents' allegations of indirect infringement are not plausible and should be dismissed.

-18-

## VIII. <u>THE COMPLAINT FAILS TO STATE A PLAUSIBLE CLAIM OF WILLFUL INFRINGEMENT FOR ANY PATENT</u>

Finally, American Patents' claim of willful infringement should also be dismissed because the complaint fails to make out a plausible claim for relief.  Enhanced damages for willful infringement are "generally reserved for egregious cases of culpable behavior."  *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).  As a result, general and formulaic assertions of willful infringement are insufficient at the pleading stage.  *See, e.g.*, *Varian Med. Sys., Inc. v. Elekta AB*, C.A. No. 15-871-LPS, 2016 WL 3748772, at *8 (D. Del. July 12, 2016).

The complaint alleges that ASUSTeK's infringement "is, has been, and continues to be willful, intentional, deliberate, and/or in conscious disregard of American Patents' rights under the patents." (Compl. at ¶ 108.)  But the complaint pleads no factual matter to support this conclusory statement.  While "subjective willfulness of a patent infringer, intentional or knowing, may warrant enhanced damages," *Halo*, 136 S. Ct. 1932-33, the complaint does not allege that ASUSTeK had knowledge of any of the patents prior to the filing of this suit, as noted above.  *See supra* Part VII.B.  Without any allegations that ASUSTeK had knowledge of the asserted patents prior to the current suit, American Patents' allegation that ASUSTeK's infringement "has been … willful, intentional, deliberate, and/or in conscious disregard of American Patents' rights under the patents" is not plausible.

Only two other allegations in the complaint appear to relate to willful infringement.  The first is the conclusory allegation that "Asus's actions are at least objectively reckless as to the risk of infringing valid patents and this objective risk was either known or should have been known by Asus." (Compl. at ¶ 107.)  No specific "objectively reckless" actions, however, are alleged in the complaint.  Such conclusory assertions are not entitled to the presumption of truth at the pleading stage.  *Iqbal*, 556 U.S. at 681.

The second allegation that appears to relate to willfulness is the allegation that ASUSTeK "has a policy or practice of not reviewing the patents of others (including instructing its employees to not review the patents of others), and thus has been willfully blind of American Patents' patent rights."  (Compl. at ¶ 106.)  As explained above in Part III.B, this allegation is unsupported and implausible.  It cannot support a claim depending on ASUSTeK's having knowledge of the patents prior to suit.  Accordingly, the willful infringement claims should be dismissed for failure to state a claim.

## IX.   <u>CONCLUSION</u>

For the foregoing reasons, ASUSTeK respectfully requests that the Court grant its motion to dismiss American Patents' direct and indirect infringement claims as to each of the asserted patents, and American Patents' willful infringement claims as to each of the asserted patents.

Dated: January 11, 2019

/s/ Allen F. Gardner
Allen F. Gardner (TX Bar No.:  24043679)
**ALLEN GARDNER LAW PLLC**
609 S. Fannin
Tyler, TX 75701
Tel: (903) 944-7537
allen@allengardnerlaw.com

Jonathan K. Waldrop
California Bar No. 297903
jwaldrop@kasowitz.com
Marcus A. Barber
California Bar No. 307361
mbarber@kasowitz.com
Jack Shaw
California Bar No. 309382
jshaw@kasowitz.com
Gurtej Singh
California Bar No. 286547
gsingh@kasowitz.com
**KASOWITZ BENSON TORRES LLP**
333 Twin Dolphin Drive
Suite 200
Redwood Shores, CA  94065
Tel:  (650) 453-5170
Fax:  (650) 453-5171

**Attorneys for Defendant**
**ASUSTeK Computer Inc.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have

consented to electronic service are being served with a copy of this document via the Court's

CM/ECF system per Local Rule CV-5(a)(3) on January 11, 2019.


*/s/ Allen F. Gardner*_____
Allen F. Gardner
